IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

KIM D.,[1]
    Plaintiff,

v.                                                     Civil No. 3:19cv515 (DJN)

ANDREW M. SAUL,
Commissioner of Social Security,
    Defendant.

**MEMORANDUM OPINION**

On January 30, 2017, Kim D. ("Plaintiff") applied for both Social Security Disability Insurance Benefits ("DIB") and Social Security Income ("SSI") under the Social Security Act ("Act"), alleging disability from diabetes, depression, chronic headaches, a mass in her brain, hypertension, high cholesterol, asthma, neuropathy, insomnia, stroke and two slipped discs in her neck, with an amended alleged onset date of October 22, 2017. The Social Security Administration ("SSA") denied Plaintiff's claims in a written decision and the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner.

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), arguing that the ALJ erred in affording partial weight to the opinion of Plaintiff's treating physician, Mark Ryan, M.D. (Pl.'s Br. Supp. Mot. Summ. J. ("Pl.'s Br.") (ECF No. 9) at 2-5.)

---

[1]     The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

This matter now comes before the Court on the parties' cross-motions for summary judgment, rendering the matter ripe for review.[2] For the reasons set forth below, the Court DENIES Plaintiff's Motion for Summary Judgment (ECF No. 8), GRANTS Defendant's Motion for Summary Judgment (ECF No. 10) and AFFIRMS the final decision of the Commissioner.

## I. PROCEDURAL HISTORY

On January 30, 2017, Plaintiff filed applications for DIB and SSI with an alleged onset date of August 1, 2016. (R. at 223-32.) Plaintiff subsequently amended her onset date to October 22, 2017. (R. at 10, 58.) The SSA denied Plaintiff's claims initially on March 7, 2017, and again upon reconsideration on May 30, 2017. (R. at 134-61.) At Plaintiff's written request, the ALJ held a hearing on July 11, 2018. (R. at 31-59.) On July 31, 2018, the ALJ issued a written opinion, denying Plaintiff's claims and concluding that Plaintiff did not qualify as disabled under the Act, because "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (R. at 19-20.) On May 16, 2019, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner subject to review by this Court. (R. at 1-6.)

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court "will affirm the Social Security Administration's disability determination 'when an ALJ has applied correct legal

---

[2] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision-makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). In considering the decision of the Commissioner based on the record as a whole, the court must "take into account 'whatever in the record fairly detracts from its weight.'" *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if any substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 472. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

3

The Social Security Administration regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. §§ 404.1520(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity ("RFC"), accounting for the most that the claimant can do despite her physical and mental limitations. §§ 404.1545(e), 416.945(e). At step four, the ALJ assesses whether the claimant can perform her past work given her RFC. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. §§ 404.1520(a)(v), 416.920(a)(4)(v).

### III.   THE ALJ'S DECISION

On July 11, 2018, the ALJ held a hearing during which Plaintiff (represented by counsel) and a vocational expert ("VE") testified. (R. at 31.) On August 3, 2018, the ALJ issued a written opinion, finding that the Plaintiff did not qualify as disabled under the Act. (R. at 10-20.)

The ALJ followed the five-step evaluation process established by the Social Security Act in analyzing Plaintiff's disability claim. (R. at 13-20.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (R. at 13.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: degenerative disc disease of the cervical spine, diabetes mellitus, obesity, chronic obstructive

pulmonary disease ("COPD"), carpal tunnel syndrome and headaches. (R. at 13.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (R. at 14-15.)

In assessing Plaintiff's RFC, the ALJ found that Plaintiff could perform light work with some additional limitations. (R. at 15.) Specifically, Plaintiff could frequently balance and occasionally stoop, kneel, crawl and climb ramps and stairs. (R. at 15.) Plaintiff could never climb ladders, ropes or scaffolds. (R. at 15.) Plaintiff could experience only occasional exposure to respiratory irritants such as dust, odors, gases and fumes, and Plaintiff could never be exposed to hazardous conditions such as unprotected heights and moving machinery. (R. at 15.) Finally, the ALJ limited Plaintiff to simple, routine tasks. (R. at 15.)

At step four, after considering Plaintiff's age, education, work experience and RFC, the ALJ found that Plaintiff could perform her past relevant work as a cashier. (R. at 18.) In the alternative, at step five, the ALJ found that the Plaintiff could perform jobs existing in significant numbers in the national economy, including the representative occupations of marker, router and office helper. (R. at 18-20.) Therefore, the ALJ concluded that Plaintiff did not qualify as disabled under the Act. (R. at 20.)

## IV. ANALYSIS

Plaintiff, age fifty-three at the time of this Memorandum Opinion, previously worked as a bagger, cashier and home health aide. (R. at 18.) She applied for DIB and SSI, alleging disability from diabetes, depression, chronic headaches, a mass in her brain, hypertension, high cholesterol, asthma, neuropathy, insomnia, stroke and two slipped discs, with an amended onset date of October 22, 2017. (R. at 10, 58, 223-32, 247-54.) Plaintiff's appeal to this Court alleges

5

that the ALJ erred in affording only partial weight to the opinion of Plaintiff's treating physician, Dr. Ryan. (Pl.'s Br. at 2-5.) For the reasons set forth below, the ALJ did not err.

Plaintiff argues that the ALJ erred in assigning partial weight to Dr. Ryan's opinion without providing meaningful analysis of his assessment. (Pl.'s Br. at 4.) Specifically, Plaintiff argues that the ALJ failed to apply the treating physician rule when assessing Dr. Ryan's opinion. (Pl.'s Br. at 4-5.) Plaintiff contends that the ALJ failed to provide the requisite "good reasons" in assigning partial weight to Dr. Ryan's opinion and that the ALJ's assessment included internal inconsistencies. (Pl.'s Br. at 8.) Defendant responds that the ALJ adequately explained the weight assigned to Dr. Ryan's opinion and that substantial evidence supports the weight assigned. (Def.'s Mot. for Summ. J. and Mem. in Supp. Thereof ("Def.'s Mem.") (ECF No. 10) at 14-15.)

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments, that would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluations that have been ordered. 20 C.F.R. §§ 404.1512, 404.1527, 416.912, 416.927. When the record contains several medical opinions that are consistent with each other, the ALJ makes a decision based on that evidence. §§ 404.15272(c), 416.927(c). If, however, the medical opinions conflict with each other or with other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. §§ 404.1527(c)(1)-(6), (d), 416.927(c)(1)-(6), (d).

6

Under the regulations, an ALJ may consider only an "acceptable medical source" as a treating source that offers an opinion entitled to controlling weight. SSR 06-03p.[3] Acceptable medical sources include licensed physicians, licensed or certified psychologists and certain other specialists, depending on the claimed disability. §§ 404.1513(a), 404.1527(a), 416.913(a), 416.927(a). The regulations also provide for the consideration of opinions from "other sources," including nurse-practitioners, physician's assistants or therapists. SSR 06-03p; §§ 404.1527(f), 416.927(f).[4] Under the applicable regulations and case law, a treating source's opinion must be given controlling weight if medically acceptable clinical and laboratory diagnostic techniques support it and it comports with other substantial evidence in the record. §§ 404.1527(c)(2), 416.927(c)(2); *Lewis v. Berryhill*, 858 F.3d 858, 867 (4th Cir. 2017); *Craig*, 76 F.3d at 590; SSR 96-2p. Further, the regulations do not require that the ALJ accept opinions from a treating source in every situation, such as when the source opines on the issues of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the treating source's opinion proves inconsistent with other evidence or when other evidence in the record does not strongly support the source's opinion. §§ 404.1527(c)(3)-(4), (d), 416.927(c)(3)-(4), (d).

---

[3] Effective March 27, 2017, the SSA rescinded SSR 96-2p and 06-3p, instead incorporating some of the Rulings' policies into 20 C.F.R. §§ 404.1527(f), 416.927(f). 82 Fed. Reg. 5844-01, at 5844-45, 5854-55 (Jan. 18, 2017). Plaintiff filed her claim on January 30, 2017, before this regulation took effect. (R. at 223, 225.) The SSA does not have the power to engage in retroactive rulemaking. *Compare Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) (requiring Congress to expressly convey the power to promulgate retroactive rules due to its disfavored place in the law), *with* 42 U.S.C. § 405(a) (granting the SSA the general power to make rules, but not granting retroactive rulemaking power). Because the regulation does not have retroactive effect, SSR 06-03p applies to the Plaintiff's claim.

[4] The regulations detail that "other sources" include medical sources that are not considered "acceptable medical sources" under 20 C.F.R. §§ 404.1527(f) and 416.927(f). The given examples are a non-exhaustive list. SSR 06-03p.

7

Requiring an ALJ to assign specific weight to medical opinions is necessary, because a reviewing court "faces a difficult task in applying the substantial evidence test when the [Commissioner] has not considered all relevant evidence." *Arnold v. Sec'y of Health Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977). Unless the Commissioner "has sufficiently explained the weight [s]he has given to obviously probative exhibits, to say that h[er] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Id.* (quoting *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974)) (internal quotation marks omitted). The assignment of weight needs to be sufficiently specific "to make clear to any subsequent reviewers the weight the adjudicator gave to the . . . source's medical opinion and the reasons for that weight." SSR 96-2p (discussing affording weight to a plaintiff's treating physician). Accordingly, a reviewing court cannot determine if substantial evidence supports an ALJ's findings "unless the [ALJ] explicitly indicates the weight given to all the relevant evidence." *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (citing *Myers v. Califano*, 611 F.2d 980, 983 (4th Cir. 1980); *Strawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979); *Arnold*, 567 F.2d at 259)).

Courts generally should not disturb an ALJ's decision as to the weight afforded a medical opinion absent some indication that the ALJ "dredged up 'specious inconsistencies.'" *Dunn v. Colvin*, 607 F. App'x 264, 267 (4th Cir. 2015) (citing *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)). Indeed, an ALJ's decision regarding weight afforded a medical opinion should be left untouched unless the ALJ failed to give a sufficient reason for the weight afforded. *Id.*

Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must consider the factors set forth in §§ 404.1527(c)(1)-(6) and 416.927(c)(1)-(6) when deciding the

weight to give any medical opinion. These factors include: (1) whether the source of the opinion has examined Plaintiff; (2) whether the source of the opinion has a relationship with Plaintiff; (3) whether relevant evidence supports the source's opinion; (4) whether there is consistency between the source's opinion and the medical record; (5) whether the source of the opinion is a specialist; and, (6) any other relevant factors that support or contradict the opinion (including "the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has"). 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). However, those same regulations specifically vest the ALJ — not the treating source — with the authority to determine whether a claimant qualifies as disabled as defined under the Act. §§ 404.1527(d)(1), 416.927(d)(1). Although the regulations explicitly apply these enumerated factors to treating sources, those same factors may be applied in evaluating opinion evidence from "other sources." SSR 06-03p.

Here, on June 4, 2018, Dr. Ryan completed a medical source statement, in which he indicated that he began treating Plaintiff in October 2007, seeing Plaintiff every two to three months thereafter. (R. at 831-34.) In the statement, Dr. Ryan reported that Plaintiff suffered from chronic pain, uncontrolled type two diabetes and an illegible condition. (R. at 831.) Dr. Ryan declined to answer most of the questions in the assessment. (R. at 831-84.) However, he affirmed that Plaintiff could perform activities like shopping, traveling without a companion for assistance, preparing a simple meal, caring for her personal hygiene, and sorting, handling and using papers and files. (R. at 833-34.)

In a separate letter dated June 4, 2018, Dr. Ryan explained that he had not assessed Plaintiff's physical limitations in the medical source statement, because doing so called upon training and experience that he lacked as a family physician. (R. at 835.) He further explained

that he was providing a second letter in which he would both describe Plaintiff's medical status and limitations and evaluate how these factors limited Plaintiff's employment status. (R. at 835.)

In the second letter, also dated June 4, 2018, Dr. Ryan concluded that Plaintiff's "medical problems are serious and long-standing if not permanent, and will interfere with her ability to work both because of the primary symptoms from the medical conditions as well as the medication regimen required for treatment." (R. at 839.) Dr. Ryan did not address how long Plaintiff could sit and stand/walk in an 8-hour work day. (R. at 831.) Dr. Ryan also declined to assess both Plaintiff's capacity to perform various functions, including climbing, balancing, stooping, and kneeling, and her ability to tolerate exposure to hazards. (R. at 833.)

In analyzing Dr. Ryan's letters, the ALJ found that although Dr. Ryan provided a narrative indicating that Plaintiff experienced chronic pain and suffered from diabetes, he failed to assess Plaintiff's functional capacity. (R. at 18.) Although the ALJ found Dr. Ryan's statements consistent with the record, he ultimately assigned Dr. Ryan's letters partial weight, because Dr. Ryan provided no assessment of Plaintiff's functional limitations. (R. at 18.)

Plaintiff argues that the ALJ failed to properly apply the treating physician rule to Dr. Ryan's opinion. (Pl.'s Br. at 6.) However, the Court finds that the ALJ appropriately discredited Dr. Ryan's opinion for his failure to opine on Plaintiff's specific functional limitations. Indeed, courts in this District, including this Court, have held that an ALJ may afford less-than-controlling weight to a treating source opinion when the opinion lacks any description of the plaintiff's functional limitations. *See, e.g., Vanessa M. v. Saul,* 2019 WL 6749416, at *11 (E.D. Va. Dec. 11, 2019) (Novak, J.) (finding that the ALJ properly afforded little weight to a treating source's opinion, in part, because the opinion "merely described Plaintiff's symptoms rather than her specific functional limitations"); *Stracco v. Saul,* 2019 WL 4724319, at *5 (E.D. Va. Aug.

14, 2019) ("The ALJ properly discounted some treating physicians' opinions because they failed to describe any specific functional limitations in their findings."), *report and recommendation adopted*, 2019 WL 4720982 (E.D. Va. Sept. 26, 2019).

Courts in this Circuit have likewise affirmed that ALJs may assign less-than-controlling weight to a treating source opinion when the opinion includes conclusory statements with no explanation. *See, e.g., Musser v. Berryhill*, 2017 WL 4399202, at *10 (W.D. Va. Sept. 29, 2017); (affirming the ALJ's decision not to assign a treating source's opinion controlling weight, because it did not address the severity or effects of the plaintiff's illness or opine on the plaintiff's specific limitations); *Thomas v. Colvin*, 2016 WL 11410579, at *14 (E.D. Va. Jan. 7, 2016) (finding that the ALJ appropriately declined to assign controlling weight to a treating source's opinion that "consisted primarily of unexplained conclusions without a list of specific functional limitations that the ALJ could consider"), *report and recommendation adopted*, 2016 WL 1070826 (E.D. Va. Mar. 16, 2016).

As with the cases cited above, Dr. Ryan's letters here provided no assessment of Plaintiff's functional limitations before concluding that Plaintiff's impairments and symptoms would interfere with her ability to work. (R. at 839.) Dr. Ryan's failure to opine on Plaintiff's specific functional limitations provided grounds for assigning the opinion less-than-controlling weight. Therefore, the ALJ did not err.

Neither does the Court find any error in the ALJ's failure to explicitly consider the factors enumerated under §§ 404.1527(c) and 416.927(c). Indeed, although the regulations outline factors that an ALJ must consider when evaluating a medical opinion, they do not require ALJs to explicitly discuss each of the enumerated factors. *See Rose v. Astrue*, 2012 WL

11

6042359 (E.D. Va. July 31, 2012) (Novak, M.J.), *report and recommendation adopted*, 2012 WL 6026473, at *6 (E.D. Va. Dec. 4, 2012).[5]

Likewise, although Plaintiff argues that the ALJ's assessment of Dr. Ryan's opinion proves internally inconsistent, because the ALJ found Dr. Ryan's statements both consistent with the record and at the same time too vague to afford the opinion controlling weight, the Court finds no such inconsistency. (Pl.'s Br. at 8.) The ALJ did not assign Dr. Ryan's opinion partial weight, because it contained statements that were consistent with the record; instead, the ALJ assigned the opinion partial weight, because, despite Dr. Ryan's generally supported assessment of Plaintiff's impairments and symptoms, the opinion provided no functional analysis from which the ALJ could determine Plaintiff's RFC. Such an assessment proves neither internally inconsistent nor contrary to the regulations and caselaw. Indeed, it defies logic to require ALJs to assign controlling weight to an opinion that provides no support for any specific RFC findings, merely because the opinion contained a generally supported assessment of the plaintiff's condition.

Ultimately, the ALJ could discredit Dr. Ryan's opinion based on its conclusory and limited nature, and the Court's own review of Dr. Ryan's statements confirms that he provided no specific functional limitations that the ALJ could assess in determining Plaintiff's RFC. Accordingly, the evidence of record supports the ALJ's assignment of weight. Because the ALJ provided an adequate and substantially supported explanation for the assignment of partial weight to Dr. Ryan's opinion, the Court finds no error.

---

[5] Plaintiff also argues that the ALJ should have considered Dr. Ryan's opinion first, before the other medical opinions in the record. (Pl.'s Br. at 6.) The Court finds no merit to this argument. Indeed, nothing in the regulations dictates that ALJs must consider medical opinions in a specific order.

12

## V. CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiff's Motion for Summary Judgment (ECF No. 8), GRANTS Defendant's Motion for Summary Judgment (ECF No. 10) and AFFIRMS the final decision of the Commissioner. An appropriate order will issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

                                                    /s/
                                          David J. Novak
                                          United States District Judge

Richmond, Virginia
Date: <u>August 26, 2020</u>